UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

NIARTIES D. GRAHAM and    :   HONORABLE JOSEPH E. IRENAS
EVELYN GRAHAM,           :
                          : Civ. Action No. 09-4501 (JEI/AMD)
        Plaintiffs,   :
                          :       **OPINION**
    v.                  :
                          :
                          :
LEWIS F. CARINI, ET AL.,   :
                          :
        Defendants.   :
_____:

DANIEL K. NEWMAN, ESQ.
1202 Laurel Oak Road, Suite 207
Voorhees, New Jersey 08043
           Counsel for Plaintiffs

WILLIAM J. FERREN & ASSOCIATES
By:  Paola F. Kaczynski, Esq.
1500 Market Street, Suite 2920
Philadelphia, Pennsylvania 19102
           Counsel for Defendants

**IRENAS**, Senior District Judge:

This suit arises out of Plaintiff Niarties Graham's arrest around midnight on July 15, 2007 in the City of Vineland, New Jersey.  Plaintiffs[1] principally allege that the arresting officers used excessive force to effectuate Niarties' arrest and deliberately delayed medical treatment of his resulting injuries. Defendants, the four Vineland Police Officers present during the arrest, the City of Vineland, and the Vineland Police Department

---

[1]  Evelyn Graham, Niarties' wife, asserts a loss of consortium claim.

presently move for partial summary judgment.  For the reasons
stated herein, the Motion will be granted in part and denied in
part.

**I.**

Late at night on July 14, 2007, Plaintiffs Niarties and
Evelyn Graham, husband and wife, were returning from a party.
(N. Graham Dep. p. 50, 53-54)  By Niarties' own admission, he had
consumed a lot of alcohol at the party, and his wife was driving
their jeep home. (Id. p. 52, 54-55, 58)  In the back seat of the
jeep were Niarties' seven year-old daughter, two year-old son,
and a family friend who was passed out drunk.  (Id. p. 51-52, 58-
59)

Niarties testified that his wife was mad at him "because I
promised her I wouldn't drink like that," (N. Graham Dep. p.
56)[2], and the couple began to argue.  (Id. p. 60; E. Graham Dep.
p. 29, 32-33)  Eventually Evelyn pulled over to let Niarties out
of the jeep,[3] whereupon she used his cell phone to call 911.  (N.
Graham Dep. p. 60-62; E. Graham Dep. p. 32-33)  Niarties

---

[2]  Niarties testified that earlier in the day at the party,
he drank two 10-ounce cups of beer and "one 10 ounce cup of
tequila," which he stated was "more than enough [alcohol] to
knock me out cold."  (N. Graham Dep. p. 55)

[3]  Niartes testified that he asked to get out of the car.
(N. Graham Dep. p. 60) Evelyn testified that she insisted that he
get out over his objections.  (E. Graham Dep. p. 33)

2

testified that after the jeep was stopped, he observed his daughter having an asthma attack.  (Id. p. 62-63)

Vineland Police responded to a complaint of a "domestic dispute."  (Defs' Ex. B; Pls' Response to Defs' Statement of Undisputed Facts ¶ 2)  Defendant Sergeant Carini arrived at the scene around 12:30 a.m. on July 15, 2007, to find Niarties sitting in the front passenger seat of his jeep, while Evelyn was standing in the street next to the driver's side door.  (Carini Dep. p. 25; Pls' Response to Defs' Statement of Undisputed Facts ¶ 4).  Sergeant Carini testified that Evelyn was "yelling frantically" for "help," saying that Niarties was "crazy," "on drugs," and that he "assaulted" her.  (Id. p. 25, 33)  While Evelyn admits telling Carini that Niarties was "yelling . . . screaming . . . being obnoxious," (E. Graham Dep. p. 36), she also testified that she repeatedly told Carini that her husband had not touched her in a forceful way; that she just wanted him removed from the jeep.  (E. Graham Dep. p. 37-38)  The police report of the arrest, drafted by Defendant Patrolman Mercano, indicates that Evelyn told officers that Niarties had choked her and Mercano observed "redness to her neck."  (Defs' Ex. B)

While Sergeant Carini spoke to Evelyn, Defendant Patrolman Tellado arrived and began to speak to Niarties through the open window of the car.  (N. Graham Dep. p. 72; Defs' Ex. B; E. Graham Dep. p. 39-40)  The parties dispute exactly what was said.

According to Plaintiffs, Patrolman Tellado directed Niarties to get out of the jeep, which Niarties refused to do, stating that he was tending to his daughter who was having an asthma attack.  (E. Graham Dep. p. 39; N. Graham Dep. p. 71-72) Plaintiffs testified that Tellado then shouted "get the fuck out of the car."  (E. Graham Dep. p. 39; N. Graham Dep. p. 72) Evelyn further testified that Tellado told Niarties to get his "fat nigger ass" out of the jeep.  (E. Graham Dep. p. 39)

According to the police report,

> Officer Tellado asked Niarties to show us his hands. Niarties was turned toward the back of the vehicle speaking with his children.  Niarties immediately turned around and stated, 'Fuck you, I'm not doing anything' then stated 'fuck you guys, I'm talking with my daughter who's having an asthma attack.  Sgt. Carini asked Graham if his daughter needed medical attention, when Graham replied again 'fuck you guys, I'll talk to you in a minute.'

(Defs' Ex. B)

After a short time, Niarties did exit the jeep and started to walk toward Sergeant Carini who was standing at the rear of the jeep with Evelyn.  (N. Graham Dep. p. 79-80; Defs' Ex. B[4]) Niarties says his palms were open in a "surrender pose" (N. Graham Dep. p. 80), but the police report states that Niarties approached with "fists clenched."  (Defs' Ex. B)

According to the police report, the following transpired:

---

[4]  The police report (Defs' Ex. B) states that Niarties "jumped out [of] the passenger seat" and "aggressively walked" toward Carini.

4

[Niarties] said 'I did not fucking touch that bitch.'
Sgt. Carini advised Graham to calm down and get back
away from the victim and him.  Evelyn then stated
Niarties "[y]ou need to stop drinking.'  Niarties then
looked at Evelyn with his fists clenched and began to
charge at Evelyn.  Sgt. Carini then got in between
Niarties and Evelyn.  Niarties then grabbed Sgt.
Carini by his shoulders and attempted to push him
backwards. Sgt. Carini then 'shock shoved' Graham off
of him causing [Graham] to fall backwards onto the
ground.

(Defs' Ex. B)

According to Niarties, Sergeant Carini asked him "'what's

the problem tonight?'" and Niarties replied, "nothing."  (N.

Graham Dep. p. 84)  He further testified that Carini said

something else he could not remember, and then someone[5] "jumped

on me with their whole body and they put their whole weight

around my neck and I just say a bright light and everything went

upside down and then total black."  (Id. p. 88)  Niarties stated

that he "never touched" Sergeant Carini.  (Id. p. 89)

The parties agree that Niarties was face down on the ground

with Patrolman Tellado on his back.  (Defs' Ex. B; N. Graham Dep.

p. 93)  Niarties also testified that Tellado was choking him from

behind and that blood was coming out of his mouth (N. Graham Dep.

p. 93, 106), but Defendants dispute those assertions.[6]  The

---

[5]  Evelyn testified that it was Patrolman Tellado who
tackled Niarties.

[6]  With regard to the blood in his mouth, Niarties testified
that he had a "big gash" on the right side of his lower lip (N.
Graham Dep. p. 107), but Niarties' hospital records indicate an
absence of "major bleeding," and an absence of any injury to the

5

police report states that Niarties was physically resisting the officers' attempts to handcuff him (Defs' Ex. B), but Niarties testified that he was pinned to the ground, with his arm stuck under his body, and could not move. (N. Graham Dep. p. 96-97) According to Niarties, one of the officers "ripped his arm out from underneath [him]" and he felt is elbow "pop." (Id. p. 96) According to the police report, Sergeant Carini "placed Niarties in a 'shoulder lock' to gain control of his left arm." (Defs' Ex. B) Niarties testified that during the whole time he was on the ground he was "being choked [and] going in and out of consciousness." (N. Graham Dep. p. 105) Niarties was subsequently handcuffed, placed in the back of Defendant Patrolman Houbary's car, and transported to Vineland Police headquarters. (Defs' Ex. B; N. Graham Dep. p. 110)

Once Niarties was transported to headquarters, he testified that his elbow area started "swelling up like a grapefruit" and he told Sergeant Carini that he "need[ed] medical attention." (N. Graham Dep. p. 114) At the direction of an unidentified "lieutenant," Carini then called an EMT who arrived "in about 10, 15 minutes." (Id. p. 114-15) The EMT determined that Niarties

---

face, head, or neck. (Pls' Ex. C)
    Similarly, Niarties also testified that his "right eye was hemorrhaged" (N. Graham Dep. p. 105), but then later explained that only "the white of [his] right eye was blood filled;" there was not any blood actually coming out of his eye. (Id. p. 116-17)

needed to be transported to the hospital, which was done immediately after the police finished processing Niarties.  (Id. p. 115; Defs' Ex. B)  Hospital records indicate that Niarties arrived at the emergency room at 2:26 a.m. (Pls' Ex. C)  He was diagnosed with an elbow fracture (Id.), and released "ROR" to Evelyn after being discharged from the hospital. (Def's Ex. B)

Niarties was charged with simple assault, assaulting a police officer, and resisting arrest.  (Defs' Ex. B)  The parties apparently do not dispute that a jury acquitted Niarties of those charges.

The Amended Complaint is not a model of clarity.  It appears that Niarties asserts the following claims against all Defendants: (1) negligence; (2) assault and battery; (3) use of excessive force in violation of the United States and New Jersey constitutions; (4) delay of medical care / deliberate indifference to Niarties' medical needs in violation of the United States and New Jersey constitutions; (5) false arrest; (6) false imprisonment; and (7) malicious prosecution.[7]  As noted

---

[7]  With regard to the false arrest, false imprisonment, and malicious prosecution claims, the Amended Complaint does not clearly indicate whether only common law tort claims are being asserted or whether constitutional violations are also asserted. To the limited extent necessary for the disposition of the instant Motion (Defendants have not moved for summary judgment on the merits of the false arrest, false imprisonment, and malicious prosecution claims), the Court assumes without deciding that both common law tort claims and their constitutional analogs under 42 U.S.C. § 1983 are asserted.

7

previously, Evelyn asserts a loss of consortium claim.

Defendants presently move for partial summary judgment.


## II.

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In deciding a motion for summary judgment, the court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. Allegheny Pennsylvania,* 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is material only if it will affect the outcome of a lawsuit under the applicable law, and a dispute of a material fact is genuine if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party. *See Anderson,* 477 U.S. at 252.


## III.

Defendants assert four arguments: (1) the claims against the City of Vineland and the Vineland Police Department fail as a matter of law; (2) Plaintiffs have not adduced sufficient

8

evidence to support a claim that the Defendants were deliberately indifferent to Niarties' serious medical needs; (3) the claims against Defendant Houbary must be dismissed for lack of evidence; and (4) the record evidence cannot support a claim for punitive damages arising from the alleged assault and battery and use of excessive force.[8]

The Court addresses each argument in turn.

### A.

### (1)

With regard to the claims asserted pursuant to 42 U.S.C. § 1983, Defendants argue that the Vineland Police Department is not a proper defendant, and that there is no record evidence supporting municipal liability against the City of Vineland.[9] The Court agrees.

Pursuant to N.J.S.A. 40A:14-118, the Vineland Police

---

[8]   Defendants also move to dismiss the "John Doe" and "Richard Roe" Defendants, which Plaintiffs apparently do not oppose.  As there is no evidence before the Court that there were any other individuals or municipalities involved in the events giving rise to this suit, the Motion will be granted in this regard.

Defendants make no arguments with regard to the negligence, false arrest, false imprisonment, malicious prosecution, or loss of consortium claims.  Accordingly, except to the extent those claims are related to the issue of municipal liability (discussed in Section III., A., (1) and (2)), this Opinion does not address them.

[9]   Plaintiffs' submission in opposition to Defendants' Motion ignores these arguments.

Department is not a separate entity, but merely "an executive and enforcement function of municipal government," thus, the Police Department cannot be liable under § 1983. *See Adams v. City of Camden*, 461 F. Supp. 2d 263, 266 (D.N.J. 2006) (holding that the City of Camden Police Department was entitled to judgment as a matter of law because it was not "an entity separate from the municipality").

As to the municipality itself, Defendants correctly observe that the Amended Complaint does not even plead the existence of a policy, practice, or custom which caused the alleged violation of Niarties' constitutional rights, *see Monell v. Dept. of Social Servs.*, 436 U.S. 658 (1978), and there is no record evidence of any policy, practice or custom. Accordingly, the City of Vineland also cannot have any liability under § 1983.

Summary Judgment will be granted to Defendants Vineland Police Department and the City of Vineland on all § 1983 claims against them.

### (2)

Defendants also argue that the state law claims are barred by the New Jersey Tort Claims Act, which provides "public entities" immunity from liability "for the acts or omissions of a public employee constituting a crime, actual fraud, actual malice, or willful misconduct." N.J.S.A. 59:2-10. The New

10

Jersey Supreme Court has recognized that the statute generally precludes public entity liability for "tortious intentional conduct" of its employees. *Velez v. City of Jersey City,* 180 N.J. 284, 289 (2004).

The Court agrees with Defendants that the City of Vineland and the Vineland Police Department[10] cannot be held liable on the assault and battery and malicious prosecution claims. Assault and battery is the classic example of an intentional tort, and Plaintiffs clearly allege that the individual Defendants engaged in willful misconduct in using excessive force to effectuate Niarties' arrest.[11] Similarly, "actual malice" is an element of a malicious prosecution claim, *Brunson v. Affinity Federal Credit Union*, 199 N.J. 381, 393 (2009); therefore the City of Vineland is shielded from liability on that claim as well.

The Court reaches the same conclusion with respect to the false arrest and false imprisonment claims. While there may be cases where police officers arrest and imprison a person merely upon a mistaken, good faith belief that they had probable cause

_____

[10]  The Vineland Police Department is a "public entity" under the Tort Claims Act. *See* N.J. Stat. 59:1-3 ("'Public entity' includes the State, and any county, municipality, district, public authority, public agency, and any other political subdivision or public body in the State.").

[11]  Additionally, if the jury believes Evelyn's testimony that Defendant Tellado called Niarties a "nigger" (E. Graham Dep. p. 39), that evidence might support a finding that at least his actions were motivated by actual malice.

(and therefore an argument could be made that the arrest and imprisonment were not the product of "willful misconduct")[12], this is not such a case.

Nothing in the record suggests that the false arrest and false imprisonment claims could possibly be based on the individual Defendants' good faith, but ultimately mistaken, belief that they had probable cause to arrest Niarties. According to Plaintiffs' version of events, the individual Defendants, unprovoked, tackled Niarties from behind and pinned him down so he could not move.  Therefore, Plaintiffs argue, the

_____

[12]  *See, e.g., Adams v. City of Camden*, 461 F. Supp. 2d 263, 270 (D.N.J. 2006) ("the Tort Claims Act prohibits an action against a municipality when its municipal police officer falsely arrests or imprisons someone only if the officer was acting outside the scope of employment or acted with wilful misconduct. Because these torts do not require that the officer had any particular state of mind, there is no per se ban on this action against the municipality.  For false arrest, '[t]he essential thing is the constraint of the person,' *Earl v. Winne*, 14 N.J. 119, 127, 101 A.2d 535 (1953), while '[t]he gist of false imprisonment is merely unlawful detention without more,' *id.* at 128.  It is possible for the City to be liable if Officer Acetti or the officers did not act with willful misconduct."); *see also Merman v. City of Camden,* No. 07-cv-3449, 2010 U.S. Dist. LEXIS 58961 at *45-46 (D.N.J. June 15, 2010) ("plaintiff asserts that her wrongful imprisonment claim survives the City's statutory immunity because that claim does not hinge upon an officer's state of mind and may have been perpetrated by misconduct that was not intentional, willful, or malicious.  The Court agrees.") (citing *Adams*); *but see M.K. v. Hillside Board of Education,* No. 06-1438, 2006 U.S. Dist. LEXIS 55683 at *5-6, 11 (D.N.J. July 20, 2006) (holding that "wilful misconduct" is an "intermediary position between simple negligence and the intentional infliction of harm," and reasoning that because false imprisonment is an intentional tort, it is always the result of "willful misconduct.").

12

officers had no conceivable basis to believe that Niarties assaulted Sergeant Carini or resisted arrest.  If the jury finds for Niarties on this claim, they will have necessarily found that the individual Defendants engaged in willful misconduct.

Accordingly, the Court holds that the City of Vineland and the Vineland Police Department are statutorily immune, pursuant to N.J.S.A. 59:2-10, from all of the state law claims asserted in the Amended Complaint.  Summary judgment will be granted to the City of Vineland and the Vineland Police Department on these claims.

### B.

### (1)

As to the § 1983 delay of medical care claim, the Court begins with the observation that Niarties was a pretrial detainee and not a convicted prisoner, therefore his rights with regard to medical care flow from the Fourteenth Amendment's Due Process Clause rather than the Eighth Amendment.  *See A.M. v. Luzerne County Juvenile Det. Ctr.*, 372 F.3d 572, 584 (3d Cir. 2004).  However, the standard is the same: deliberate indifference to a person's serious medical needs.  *Id.; Groman v. Township of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995).

The Court will assume without deciding that Niarties' elbow

fracture was a serious medical need.[13]   However, no reasonable
juror could conclude that Sergeant Carini was deliberately
indifferent to Niarties' medical needs.[14]   According to Niarties'
own testimony, Carini was quite responsive to Niarties' medical
needs.   Niarties testified that at the police station he
complained to Sergeant Carini that he needed medical treatment,
an EMT was called, and the EMT arrived within 10 to 15 minutes.
(N. Graham Dep. p. 114)   As soon the Vineland Police finished
processing Niarties, the EMT took him to the hospital.   (Id. p.
115)   Moreover, the undisputed evidence shows that Niarties was
arrested at 12:28 a.m. (Defs' Ex. B) and was admitted to the
hospital almost exactly two hours later, at 2:26 a.m.   (Pls' Ex.

---

[13]   "A medical need is 'serious'. . . if it is one that has
been diagnosed by a physician as requiring treatment or one that
is so obvious that a lay person would easily recognize the
necessity for a doctor's attention." *Monmouth County
Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347
(3d Cir. 1987).
    The record evidence cannot support a conclusion that the
gash to Niarties' lip was a serious medical need.   Niarties
testified that the gash did not require medical treatment,
explaining, "I just took care of it myself.   To me it was just
like a flesh wound. . . . Kept it clean with peroxide . . . and
[apply] Neosporin."  (N. Graham Dep. p. 107-08)   Also, as noted
previously, Niarties' hospital records reflect the absence of any
injury or major bleeding on his head, face or neck.  (Pls' Ex. C)
Thus, as to the gash, no reasonable juror could conclude that a
lay person would easily recognize the necessity for a doctor's
attention.

[14]   With respect to this claim, Plaintiffs point to no record
evidence concerning any of the other individual Defendants.
Accordingly, those Defendants are entitled to summary judgment on
the § 1983 Due Process delay of medical care claim.

C)

Plaintiffs assert that medical treatment should have been "summoned at the scene [of the arrest] or *immediately* upon being taken to the police station." (Pls' Brief, p. 5; emphasis in the brief) However, nothing in the record indicates that Niarties complained about his arm during his arrest[15], or while being transported to the police station. As soon as Niarties did complain about his arm at the station, emergency medical personnel were summoned. A factfinder could only conclude that once Sergeant Carini knew of Niarties' injury, he responded reasonably. *Cf. Farmer v. Brennan,* 511 U.S. 825, 847 (1994) ("a prison official may be held liable under the Eighth Amendment . . . only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.").

The record evidence cannot support a finding that Niarties' constitutional right to Due Process was violated. Therefore, summary judgment is warranted on this claim.

**(2)**

Alternatively, even if there was a constitutional violation, Sergeant Carini is entitled to qualified immunity.

---

[15]   Indeed, Niarties testified he could barely speak at all during his arrest because Office Tellado was choking him. (N. Graham Dep. p. 103-04)

The qualified immunity analysis asks "'whether the [constitutional] right [that was violated] was clearly established . . . in light of the specific context of the case. . . .' A right is clearly established if 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Reedy v. Evanson,* 615 F.3d 197, 224 (3d Cir. 2010) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

Assuming arguendo that Sergeant Carini violated Niarties' Due Process rights by failing to summon medical care sooner, nothing in the case law today, much less as it stood in 2007, clearly indicates that such conduct was unlawful.

Accordingly, Sergeant Carini is entitled to summary judgment on this claim.

## C.

Defendants next argue that Defendant Houbary was not involved in Niarties' arrest, and had no contact with him afterward, therefore the claims against Houbary should be dismissed. However, issues of disputed material fact preclude summary judgment.

Evelyn testified that Houbary participated in Niarties' arrest by placing his foot on Niarties' hand and holding him down while he was face-down on the ground. (E. Graham Dep. p. 50, 54-55) While the parties apparently agree that all of the other

16

record evidence, including Niarties' testimony, fails to demonstrate that Defendant Houbary was in any way involved in the arrest, the Court cannot ignore Evelyn's testimony.  It will be left to the factfinder to determine what involvement, if any, Defendant Houbary had in Niarties' arrest.[16]

Defendants' Motion for Summary Judgment in this regard will be denied.[17]

## D.

Lastly, Defendants move for summary judgment on punitive damages only as related to the excessive force and assault and battery claims.  The Court first addresses the § 1983 claim (Fourth Amendment excessive force) and then the state law claim (assault and battery).

## (1)

"The purpose of punitive damages is to punish the defendant for his willful or malicious conduct and to deter others from similar behavior."  *Memphis Community School Dist. v. Stachura*,

---

[16]   Plaintiffs alternatively argue that even if Defendant Houbary was not personally involved in Niarties' arrest, he could be liable for failing to intervene to stop the use of excessive force.  However, Defendants correctly observe that no such claim is pled in the Amended Complaint.

[17]   As previously stated in footnote 14, however, Defendant Houbary is entitled to summary judgment on the § 1983 Due Process delay of medical care claim.

477 U.S. 299, 306 n.9 (1986).  "A jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."  *Smith v. Wade*, 461 U.S. 30, 56 (1983).

The facts viewed in the light most favorable to Plaintiffs are sufficient to allow a punitive damages claim to survive summary judgment.  According to Plaintiffs, Niarties never laid a hand on any officer, yet they ganged-up on him, tackled him to the ground, choked him, and fractured his elbow.  This evidence, if believed by the jury, could support a finding that the Defendants were, at a minimum, callously indifferent to Niarties' Fourth Amendment rights.

Defendants' Motion for Summary Judgment with regard to punitive damages as they relate to the § 1983 Fourth Amendment excessive force claim will be denied.[18]

### (2)

For similar reasons, the punitive damages claim as it

---

[18]  Additionally, under § 1983 punitive damages may not be assessed against municipalities.  *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).  However, as explained *supra* in Section III., A., (1), the Court will grant summary judgment to the City of Vineland on the § 1983 claims, therefore the punitive damages issue with regard to the City of Vineland is moot.

relates to the state law claim also survives.

The same facts that could support a punitive damages award on the excessive force claim could also support a punitive damages award on the assault and battery claim.  Under New Jersey's Punitive Damages Act,

> [i]n determining whether punitive damages are to be awarded, the trier of fact shall consider all relevant evidence, including but not limited to, the following: (1) The likelihood, at the relevant time, that serious harm would arise from the defendant's conduct; (2) The defendant's awareness or reckless disregard of the likelihood that the serious harm at issue would arise from the defendant's conduct; (3) The conduct of the defendant upon learning that its initial conduct would likely cause harm; and (4) The duration of the conduct or any concealment of it by the defendant.

N.J.S.A. 2A:15-5.12(b).  If a jury believes Plaintiffs' evidence, they could reasonably find that serious harm was likely to result from the individual Defendants' actions and that the individual Defendants recklessly disregarded the risk of serious harm to Niarties.

Accordingly, Defendants' Motion for Summary Judgment as to the availability of punitive damages on the assault and battery claim will be denied.

### IV.

For the above-stated reasons, Defendants' Motion for Partial Summary Judgment will be granted in part and denied in part. Specifically, summary judgment will be granted to the Vineland

Police Department, the City of Vineland, and the "John Doe" and "Richard Roe" Defendants on all claims against them.  Summary judgment will also be granted to all of the individual Defendants on the § 1983 Due Process delay of medical care claim.  The Motion will be denied in all other respects.  An appropriate Order accompanies this Opinion.


May 2, 2011                          __s/ Joseph E. Irenas_____
                                     **JOSEPH E. IRENAS, S.U.S.D.J.**